**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| ANTHONY G. ECKERT, | : | |
| *Plaintiff,* | : | Case No. 1:25-cv-00590 |
| v. | : | Judge Jeffery P. Hopkins |
| TOTAL QUALITY LOGISTICS, LLC, *et al.*, | : | |
| *Defendants.* | : | |

---

**OPINION AND ORDER**

---

Defendants Total Quality Logistics, LLC and Kenneth Oaks (collectively, "TQL" or "Defendants") filed a Motion to Compel Arbitration and Dismiss Plaintiff's Complaint or, in the Alternative, Stay Pending Arbitration (Doc. 7) (the "Motion") on September 10, 2025. Plaintiff Anthony G. Eckert ("Plaintiff" or "Mr. Eckert"), proceeding without counsel, filed a memorandum in opposition to the Motion (Doc. 9) to which Defendants have replied (Doc. 10). The matter presently before the Court turns on whether the claims asserted in Mr. Eckert's Complaint (Compl., Doc. 1) should be heard in this Court or whether these claims must undergo mandatory arbitration in accordance with the Dispute Resolution and Arbitration Agreement (Ds.' Ex. 1, Doc. 7-1) ("Arbitration Agreement" or "Agreement") that Mr. Eckert signed at the time he began employment with TQL. For the reasons provided below, Defendants' Motion (Doc. 7) is **GRANTED IN PART** and **DENIED IN PART**.

1

Plaintiff's claims shall be arbitrated under the parties' Arbitration Agreement, and pursuant to 9 U.S.C. § 3, this action is **STAYED** pending completion of those proceedings.[1]

## I.    BACKGROUND

Mr. Eckert began employment with TQL as a Logistics Account Executive Trainee on March 17, 2025. Compl., Doc. 1, Pl. Ex. A, PageID 5–6. That same day, Mr. Eckert electronically signed an Arbitration Agreement provided by TQL and agreed "to resolve any and all disputes and claims between them ('Legal Claims') in accordance with the terms of th[e] Agreement," through a two-step process. Ds.' Ex. 1, Doc. 7-1, PageID 36, 37–38. As outlined in the Agreement, step one allows for either Mr. Eckert or TQL to "initiate an informal conference or confidential, non-binding mediation by serving a written request for such conference or mediation upon the other Party." *Id*. at PageID 37. Following that, if either party "desires to pursue a Legal Claim beyond Step 1," that party can serve a notice upon the other to initiate the arbitration process. *Id*. As defined in the Agreement, "Legal Claims" expressly include those related to the payment of wages, overtime pay, employer retaliation, and (among others) claims under the Fair Labor Standards Act of 1938 (the "FLSA"). *Id*. at PageID 36–37.

Mr. Eckert worked for TQL for only a short time—approximately two weeks—before his employment was terminated on April 2, 2025. Doc. 9, PageID 103. Shortly thereafter, Mr.

---

[1]    By its terms, the statute provides: "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, provided the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. Because the Court has determined that Mr. Eckert's claims are referable to arbitration under the parties' Agreement and Defendants expressly requested, in the alternative, that this action be stayed pending arbitration, § 3 requires a stay rather than dismissal in this case. *See Smith v. Spizzirri*, 601 U.S. 472, 474 (2024) ("The question here is whether § 3 permits a court to dismiss the case instead of issuing a stay when the dispute is subject to arbitration and a party requests a stay pending arbitration. It does not.").

Eckert filed a Complaint against TQL in Federal District Court on August 15, 2025. Compl., Doc. 1. In the Complaint, he asserts three FLSA claims arising out of his employment with TQL. First, he alleges that TQL misclassified him as an exempt employee in violation of the FLSA, 29 U.S.C. § 201 *et seq*. Second, he alleges that TQL failed to pay him overtime compensation in violation of 29 U.S.C. § 207. Third, he alleges that TQL retaliated against him for engaging in protected activity in violation of 29 U.S.C. § 215(a)(3). *See* Compl., Doc. 1, Pl. Ex. A, PageID 8–9. Mr. Eckert further alleges that during his brief employment with TQL he was scheduled to work approximately forty-four hours per week and was required to work every-other-Saturday without overtime pay. *Id*. at PageID 9.

On September 10, 2025, Defendants moved to compel arbitration pursuant to the parties' Arbitration Agreement. Doc. 7. Defendants contend that all three claims asserted in the Complaint fall within the Arbitration Agreement's definition of covered "Legal Claims," including claims for wages, overtime pay, retaliation, and other claims under the FLSA, and therefore must be arbitrated rather than litigated in this Court. Doc. 7, PageID 32. Mr. Eckert filed a response in opposition to the Motion (Doc. 9) to which Defendants replied (Doc. 10). The matter is now fully briefed and ripe for resolution.

## II.    LEGAL STANDARD

The Federal Arbitration Act (the "Act" or "FAA") provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act "[m]anifest[s] a 'liberal federal policy favoring arbitration agreements'" and requires courts to enforce such agreements according to their terms, subject only to generally applicable state-law contract defenses. *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (citation omitted);

*Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005). "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch*, 315 F.3d at 624; *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). Such agreements may be invalidated "for the same reasons for which any contract may be invalidated, including forgery, unconscionability, and lack of consideration." *Glazer*, 394 F.3d at 450. In reviewing a motion to compel arbitration, such as the one presently before the Court, the Court must "treat the facts as [it] would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the nonmoving party." *Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 851 (S.D. Ohio 2003).

### III.    LAW AND ANALYSIS

Mr. Eckert's objections fall into three broad categories. First, he argues that the Arbitration Agreement itself is invalid and unconscionable because it was allegedly "concealed" from him by TQL and contains unfair provisions such as a one-year limitations and delegation clause that unlawfully assigns gateway questions of formation, applicability, and enforceability to the arbitrator. Second, he asserts that TQL's alleged FLSA violations and prior litigation history give it "unclean hands" which altogether bars enforcement of the Arbitration Agreement under the Sixth Circuit's decision in *Total Quality Logistics, LLC v. Traffic Tech, Inc.*, No. 22-3148, 2023 WL 1777387 (6th Cir. Feb. 6, 2023). Third, he maintains that TQL waived or forfeited its right to arbitrate by failing to initiate mediation, which is the first step outlined in the Arbitration Agreement. Doc. 9, PageID 80–89. The Court addresses each argument in turn.

A. *Validity of the Arbitration Agreement*

Under Ohio law, a valid contract requires "an offer, an acceptance, contractual capacity, consideration (the bargained-for legal benefit or detriment), a manifestation of mutual assent, and legality of object and of consideration." *Lake Land Emp. Group of Akron, LLC v. Columber*, 2004-Ohio-786, ¶ 14; *Stonebridge Operating Co., LLC v. Antero Res. Corp.*, 510 F. Supp. 3d 567, 575 (S.D. Ohio 2020) (citing *Kostelnik v. Helper*, 2002-Ohio-2985, ¶ 16); *Glazer*, 394 F.3d at 451 ("State contract law . . . governs in determining whether the arbitration clause itself was validly obtained . . . "). And both parties to the agreement "must objectively manifest an intent to be bound." *Jones v. U-Haul Co. of Mass. & Ohio Inc.*, 16 F. Supp. 3d 922, 933 (S.D. Ohio 2014). Here, Mr. Eckert asserts that he was "never provided . . . a copy of the agreement during employment or at termination" and only received a copy of the Agreement on September 10, 2025, months after termination of his employment at TQL. Doc. 9, PageID 86–87. The record presented before the Court, however, tells a different story.

Here, the record shows that the Arbitration Agreement was presented as a condition of Mr. Eckert's employment with TQL and that Mr. Eckert electronically signed the Agreement on March 17, 2025, the day his employment began. Ds.' Ex. 1, Doc. 7-1, PageID 43. By signing, Mr. Eckert expressly acknowledged that he had read the Agreement in its entirety, had the opportunity to consult with counsel beforehand, intended to sign it, understood its terms, and "knowingly, voluntarily, and willfully" entered into the Agreement "without any duress or coercion of any kind," thereby objectively manifesting assent and contractual capacity. *Id*. Courts in this District enforce arbitration agreements of this nature when accompanied by an electronic acknowledgment clause such as the one appearing in this

5

case. *See Jones*, 16 F. Supp. 3d at 934–35 (enforcing arbitration agreement based on e-signature submitted via employer's HR system).

The Agreement recites that it was entered into "in consideration of the mutual promises, terms, conditions, and covenants set forth [therein], and the continued employment of Employee." Ds.' Ex. 1, Doc. 7-1, PageID 36. Mr. Eckert signed the Arbitration Agreement on March 17, 2025, and continued working for TQL until his termination on April 2, 2025—just sixteen days later. *Id.* at PageID 43; Compl., Doc. 1, Pl. Ex. A, PageID 5. Although Mr. Eckert's employment was brief, his continued employment after signing the Arbitration Agreement is sufficient consideration under Ohio law. *See Dantz v. Am. Apple Group, LLC*, 123 F. App'x 702, 708–09 (6th Cir. 2005) (stating that continued employment after arbitration policy evidenced assent by employee and provided sufficient consideration). And there is no suggestion that the Agreement's subject matter is unlawful. Accordingly, the signed Arbitration Agreement in this case satisfies the elements of a valid Ohio contract between Mr. Eckert and TQL.

### B. *Unconscionability*

Mr. Eckert, however, argues that the Arbitration Agreement he signed is unconscionable. Under Ohio law, "a contract must be found both procedurally and substantively unconscionable before a court will deem it unenforceable."[2] *Dantz*, 123 F. App'x at 709 (citation omitted); *see Jeffrey Mining Prods., L.P. v. Left Fork Mining Co.*, 143 Ohio App.

---

[2] Ohio law applies here. Mr. Eckert was employed by TQL in the Cincinnati, Ohio office (Doc. 9, PageID 98), and the Arbitration Agreement signed by Mr. Eckert states, in relevant part: "This agreement will be interpreted, governed, and enforced according to the laws of the state of Ohio, except to the extent that federal law preempts those laws, and without giving effect to conflict of law provisions, laws, or rules which would result in the application of any law other than Ohio law; however, the substantive law of any Legal Claim will be governed by the laws of the state where the arbitration occurs under Section 3, except to the extent that federal law preempts those laws." Ds.' Ex. 1, Doc. 7-1, PageID 39; Compl., Doc. 1, Pl. Ex. A, PageID 5.

3d 708, 718 (8th Dist. 2001) ("[S]ubstantive unconscionability, *i.e.*, unfair and unreasonable contract terms, and (2) procedural unconscionability, *i.e.*, individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible.") (citation omitted). The Sixth Circuit in *Morrison* described procedural unconscionability this way:

> In determining procedural unconscionability, Ohio courts look to "factors bearing on the relative bargaining position of the contracting parties, including their age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, and whether alterations in the printed terms were possible." . . . "The crucial question is whether each party to the contract, considering his obvious education or lack of it, [had] a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print . . . ?"

*Morrison v. Cir. City Stores, Inc.*, 317 F.3d 646, 666 (6th Cir. 2003) (cleaned up) (internal citations omitted). Here, Mr. Eckert is not someone who lacks business sophistication. In his Complaint, Mr. Eckert describes himself as a "highly accomplished sales professional with over two decades of experience," a top-ranked performer who at times held the number one sales position and consistently remained in the top twenty percent of performers in the tri-state region. Compl., Doc. 1, Pl. Ex. A, PageID 5–6; *Morrison*, 317 F.3d at 666–67 ("Although the bargaining power was not equal . . . we do not suppose that Ohio courts would find this highly educated plaintiff, who . . . held a master's degree in administration, a victim of procedural unconscionability.").

Nor is Mr. Eckert someone unfamiliar with legal matters. In his own communications, Mr. Eckert explains that he regularly consults legal professionals and has prior experience in litigation, including working with a "trusted legal contact" who represented him successfully in prior litigation abroad and who "is currently assisting [him]." Doc. 9, PageID 92. He further states that, while he had not yet formally retained counsel in this matter, he was

7

"consulting with professionals to ensure accuracy and full compliance" with applicable laws, and the emails he attached in response to Defendants' Motion reflect that Mr. Eckert researched TQL's prior FLSA litigation, discussed exempt versus non-exempt status, and cited applicable case law in correspondence with TQL's human resources and management team. Doc. 9, PageID 92, 94. These facts undermine any suggestion that Mr. Eckert lacked either the ability or the opportunity to understand the Arbitration Agreement presented to him.

Moreover, even though an employment relationship may involve unequal bargaining power, that fact alone is insufficient to render an arbitration agreement unenforceable. *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 975 (6th Cir. 2007) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991)) ("[M]ere inequality in bargaining power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context."). Against that backdrop, Mr. Eckert's prior litigation experience, his active consultation with legal professionals, and his demonstrated business acumen together support the conclusion that he had a reasonable opportunity to understand the Arbitration Agreement he signed.

Furthermore, the overall appearance of the Arbitration Agreement Mr. Eckert signed at the beginning of his employment belies any claim he might assert of procedural unconscionability. The Agreement was presented as a standalone document, and the signature block appears in the customary location at the bottom of the final page. Ds.' Ex. 1, Doc. 7-1, PageID 43. Immediately above the signature block, the Agreement states that Mr. Eckert's electronic signature confirmed that he read the Agreement in its entirety, understood its terms, had the opportunity to consult with counsel, and "voluntarily and willfully" entered

into it "without any duress or coercion of any kind." *Id.* In addition, paragraph thirteen of the Agreement states in all-capital text:

> Acknowledgment. EMPLOYEE, BY SIGNING THIS AGREEMENT, UNDERSTANDS THAT THIS IS A CONTRACT TO USE ARBITRATION INSTEAD OF A JUDGE OR JURY TO RESOLVE ANY AND ALL CLAIMS AND DISPUTES BETWEEN EMPLOYEE AND EMPLOYER.

*Id.* at PageID 41. This acknowledgment clause further eliminated any ambiguity about the nature and effect of the Arbitration Agreement. Because Mr. Eckert has not demonstrated that there was any basis for concluding procedural unconscionability in the formation of the Agreement in this case, the Court need not reach the other arguments raised pertaining to substantive unconscionability. Here, the Court need not consider Mr. Eckert's contentions that the Agreement contains unconscionable provisions of a more substantive nature such as a one-year limitations provision and delegation clause. *See Dantz*, 123 F. App'x at 709 ("Given the lack of procedural unconscionability, we need not reach the issue of substantive unconscionability.").

### C. *Scope of the Arbitration Agreement*

Having concluded that a valid Arbitration Agreement exists and that Mr. Eckert has not demonstrated unconscionability, the Court must next determine whether the claims asserted in the Complaint fall within the scope of the Agreement. "District courts have the authority to decide, as a threshold matter, whether an issue is within the scope of an arbitration agreement." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir. 2003). In doing so, the "proper method of analysis . . . is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement." *Id.* (citation omitted). Importantly, "any doubts concerning the scope

of arbitrable issues should be resolved in favor of arbitration." *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

To begin the inquiry, the Court must first examine the claims asserted in the Complaint. There, we find three FLSA claims arising out of Mr. Eckert's employment with TQL. First, Mr. Eckert alleges that TQL misclassified him as an exempt employee in violation of the FLSA, 29 U.S.C. § 201 *et seq.* Second, he alleges that TQL failed to pay him overtime compensation in violation of 29 U.S.C. § 207. Third, he alleges that TQL retaliated against him for engaging in protected activity, in violation of 29 U.S.C. § 215(a)(3). *See* Compl., Doc. 1, Pl. Ex. A, PageID  8–9. The Arbitration Agreement, in turn, provides that "[t]he Parties agree to resolve any and all disputes and claims between them ('Legal Claims') in accordance with the terms of this Agreement exclusively." Ds.' Ex. 1, Doc. 7-1, PageID 36. As defined in the Agreement, "Legal Claims" include those related to the payment of wages, overtime pay, employer retaliation, and (among others) claims asserted under FLSA. *Id.* at PageID 36–37 (noting that the Arbitration Agreement includes "any and all claims for wages, salary, bonuses, commissions, overtime pay, premium pay, vacation pay, severance pay, benefits, contributions, or any other claims for compensation, including, without limitation, claims under the Fair Labor Standards Act of 1938").

All of Mr. Eckert's claims fall within the Agreement's definition of "Legal Claims." *Id.* His misclassification and overtime counts, counts one and two of the Complaint, challenge TQL's alleged failure to pay overtime and its classification of his position as exempt. Compl., Doc. 1, Pl. Ex. A, PageID 8–9. Those two claims fall squarely within the bucket of "claims for wages, salary . . . [and] overtime pay" that the Arbitration Agreement specifically identifies as "Legal Claims." *See* Ds.' Ex. 1, Doc. 7-1, PageID 36–37.

10

For his claim of retaliation, count three of the Complaint, Mr. Eckert alleges that TQL terminated him in response to his expressing internal complaints to management concerning TQL's purported FLSA violations. Compl., Doc. 1, Pl. Ex. A, PageID 9. Here, the retaliation claim Mr. Eckert asserts in the Complaint arises directly from his employment with TQL. As such, that claim is expressly covered by the Agreement's inclusion of "claims of . . . retaliation," which are identified as "Legal Claims." Ds.' Ex. 1, Doc. 7-1, PageID 36. All three claims concern Mr. Eckert's employment with TQL, its alleged wage-and-hour practices, and his termination, and none of the three claims can be maintained without reference to that employment relationship. *Fazio*, 340 F.3d at 395. Thus, all three of Mr. Eckert's claims fall within the Arbitration Agreement's express coverage of FLSA wages, overtime pay, and retaliation provisions.

In addition, because Mr. Eckert asserts federal statutory claims under the FLSA, the Court must consider whether Congress intended those claims to be nonarbitrable. *See CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (stating that statutory claims are subject to arbitration absent a "contrary congressional command" that is evident pursuant to the statute) (citation omitted). The party opposing arbitration bears the burden of identifying such a command. *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 227 (1987) ("The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue.").

As the Sixth Circuit has found, FLSA contains no congressional command making claims asserted under that statute nonarbitrable. *Gaffers v. Kelly Servs., Inc.*, 900 F.3d 293, 296 (6th Cir. 2018) ("[B]ecause the FLSA does not 'clearly and manifestly' make arbitration agreements unenforceable, we hold that it does not displace the Arbitration Act's requirement

11

that we enforce the employees' agreements as written."). Mr. Eckert identifies no statutory text, legislative history (to the extent that this would be relevant), or case authority suggesting that Congress intended to exempt FLSA misclassification, overtime, or retaliation claims from arbitration. Courts in this Circuit routinely compel arbitration of such claims pursuant to the employment arbitration agreements. *McGrew v. VCG Holding Corp.*, 244 F. Supp. 3d 580, 590 (W.D. Ky. 2017), *aff'd*, 735 F. App'x 210 (6th Cir. 2018) ("[T]he FLSA does not contain the 'contrary congressional command' necessary to override the FAA's mandate.").

Accordingly, even though all three of Mr. Eckert's claims asserted in the Complaint fall under the FLSA, a federal statute, and could ordinarily be brought in a separate lawsuit, that does not preclude the Court from ordering that the parties arbitrate. Indeed, contrary to Mr. Eckert's contention, the law in this Circuit strongly suggests that the Court has an obligation to enforce arbitration agreements as agreed to by the parties in an employment contract. *See Bruce v. Adams & Reese, LLP*, 168 F.4th 367, 372 (6th Cir. 2026) ("The FAA's text 'reflects the overarching principle that arbitration is a matter of contract,' and 'courts must "rigorously enforce" arbitration agreements according to their terms.'") (citation omitted); *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506, 138 (2018); *Jefferis v. Hallrich Inc.*, No. 1:18-cv-687, 2019 WL 3462590, at *3 (S.D. Ohio July 31, 2019), *report and recommendation adopted*, No. 1:18-cv-687, 2019 WL 3975774 (S.D. Ohio Aug. 22, 2019).

D.  *Unclean Hands & Traffic Tech*

Mr. Eckert next argues that the Arbitration Agreement is unenforceable under the doctrine of unclean hands and relies on the Sixth Circuit's decision in *Traffic Tech* to support that contention. *Traffic Tech, Inc.*, 2023 WL 1777387, at *4. Mr. Eckert's reliance, however, is misplaced. Importantly, "[t]he unclean hands doctrine derives from the equitable maxim that

12

'he who comes into equity must come with clean hands,'" and it ordinarily operates as a defense to equitable relief where the party seeking that relief is involved in inequitable conduct. *Cleveland Newspaper Guild, Loc. 1 v. Plain Dealer Pub. Co.*, 839 F.2d 1147, 1155 (6th Cir. 1988). The Sixth Circuit has described it this way: "The doctrine of unclean hands is an equitable concept that allows a court to *deny injunctive or declaratory relief* when 'the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party.'" *Cyber Sols. Int'l, LLC v. Pro Mktg. Sales, Inc.*, 634 F. App'x 557, 567 (6th Cir. 2016) (quoting *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1383 (6th Cir. 1995) (emphasis added)).

The doctrine is used sparingly and historically focuses on the actions of the plaintiff, the one bringing the action. *Performance Unlimited, Inc.*, 52 F.3d at 1383 ("[T]he doctrine is not to be used as a loose cannon, depriving *a plaintiff* of an equitable remedy to which he is otherwise entitled merely because he is guilty of unrelated misconduct.") (citation omitted and emphasis added); *Fetch! Pet Care, Inc. v. Atomic Pawz Inc.*, 170 F.4th 546, 554 (6th Cir. 2026) ("[T]he unclean hands doctrine 'is based on the principle that since equity tries to enforce good faith in defendants, it no less stringently demands the same good faith from the plaintiff.") (citation and quotations omitted).

The Sixth Circuit's decision in *Traffic Tech* illustrates how the unclean-hands doctrine operates and why it does not assist Mr. Eckert here. In that case, TQL, as plaintiff, sought a temporary restraining order and preliminary injunction to enforce a non-compete agreement against a former employee. *Traffic Tech, Inc.*, 2023 WL 1777387, at \*2. The employee responded by asserting the unclean hands doctrine based on TQL's alleged improper pay practices during his employment, as a defense to TQL's requested injunctive relief. *Id.* There,

13

the parties also had an arbitration agreement that broadly covered disputes about wages and other employment-related issues. *Id*. at *1. During the case, TQL moved to compel arbitration. *Id*. at *2. However, because defenses related to injunctive relief were not included within the parties' signed arbitration agreement, the unclean hands defense asserted by the defendant was properly made before the lower court, as opposed to an arbitrator. *Id*. at *3–4; *Total Quality Logistics v. Traffic Tech*, No. 1:21-cv-714, 2022 WL 523463, at *4 (S.D. Ohio Feb. 22, 2022).

Here, Mr. Eckert is the plaintiff in this action pursuing legal claims for misclassification, unpaid overtime, and retaliation under the FLSA, and he seeks money damages rather than equitable relief. Compl., Doc. 1, Pl. Ex. A, PageID 9–10 ("Plaintiff [is entitled] to liquidated damages equal to the unpaid overtime compensation."). Moreover, unlike the non-compete claims and the request for injunctive relief in *Traffic Tech*, which were not included within the scope of the arbitration agreement, the Arbitration Agreement here expressly identifies claims of "retaliation," "any and all claims for wages, salary . . . [and] overtime pay," and "claims under the Fair Labor Standards Act of 1938" as "Legal Claims" subject to arbitration. Ds.' Ex. 1, Doc. 7-1, PageID 36–37. Mr. Eckert is therefore trying to use the equitable doctrine of unclean hands to avoid arbitrating his claims, even though those claims fall within the scope of the Arbitration Agreement he signed. *Id*. at PageID 43. Accordingly, *Traffic Tech* does not support Mr. Eckert's attempt to invoke the unclean hands doctrine as a bar to arbitration, and this argument does not provide a basis to deny Defendants' Motion.

E. *Waiver*

Finally, Mr. Eckert contends that Defendants essentially waived arbitration because they failed to follow the Agreement's dispute-resolution procedures by moving to compel arbitration instead of first engaging in mediation, which is step one under the Arbitration Agreement. Doc. 9, PageID 88. "[W]aiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (citation omitted). Before 2022, courts in this Circuit often framed waiver of the right to arbitrate as requiring both conduct "completely inconsistent with any reliance on an arbitration agreement" and delay causing "actual prejudice" to the opposing party. *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012).

In *Morgan*, however, the Supreme Court clarified that prejudice is not a free-standing requirement for waiver and that courts must apply ordinary waiver principles instead. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417–19 (2022). *Morgan* shifted the focus to the actions of the party holding the right and whether those actions are inconsistent with an intent to engage in arbitration. *Id*. Here, Defendants' conduct was not inconsistent with an intent to engage in arbitration. Mr. Eckert's preference to begin with mediation does not alter the fact that the Arbitration Agreement provides that "either Party *may* initiate" an informal conference or mediation and that the parties may "choose not to use" a conference or mediation before proceeding to arbitration. Ds.' Ex. 1, Doc. 7-1, PageID 37–38 (emphasis added). Nothing in the Agreement *obligates* TQL to initiate mediation or to accept Mr. Eckert's request to mediate before invoking arbitration. Therefore, Defendants' decision to seek arbitration in response to Plaintiff's Complaint (Compl., Doc. 1) is fully consistent with the terms of the Arbitration Agreement.

15

**IV.    CONCLUSION**

For the reasons stated above, Defendants' Motion to Compel Arbitration and  Dismiss Plaintiff's Complaint or, in the Alternative, Stay Pending Arbitration (Doc. 7) is **GRANTED IN PART** and **DENIED IN PART**. The Motion is granted to the extent it seeks to compel arbitration and denied to the extent it seeks dismissal of this action. Defendants ask, in the alternative, that the Court stay this case pending arbitration. The FAA provides that a court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.[3] Accordingly, and pursuant to 9 U.S.C. § 3, this action is **STAYED** pending completion of the parties' arbitration proceedings.

**IT IS SO ORDERED.**

July 20, 2026

Jeffery P. Hopkins
United States District Judge

---

[3]    *See Spizzirri*, 601 U.S. at 478 ("[S]taying rather than dismissing a suit comports with the supervisory role that the FAA envisions for the courts. The FAA provides mechanisms for courts with proper jurisdiction to assist parties in arbitration . . . Keeping the suit on the court's docket makes good sense in light of this potential ongoing role, and it avoids costs and complications that might arise if a party were required to bring a new suit and pay a new filing fee to invoke the FAA's procedural protections.").